IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

HOWARD THOMAS MCKINNEY, #L3734                                    PETITIONER

versus                                       CIVIL ACTION NO. 5:07cv72-DCB-MTP

STATE OF MISSISSIPPI and
FRANKLIN BREWER, Warden                                           RESPONDENTS

REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition of Howard Thomas McKinney for a Writ of *Habeas Corpus* under 28 U.S.C. § 2254. Having considered the Petition [1], the Answer [20], the Rebuttal [23], the record of the state court proceedings and the applicable law, the undersigned is of the opinion that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be DENIED.

PROCEDURAL HISTORY

On November 8, 2002, following a jury trial, Petitioner was convicted of manufacture of a controlled substance (methamphetamine) (Count I), possession of a controlled substance with intent to distribute (Count II), and possession of precursor chemicals[1] with intent to manufacture methamphetamine (Count III) in the Circuit Court of Warren County, Mississippi.[2] *See* Supreme

---

[1] "The term 'precursor drug or chemical' means a drug or chemical that, in addition to legitimate uses, may be used in manufacturing a controlled substance in violation of this chapter." Miss. Code Ann. § 41-29-313(b).

[2] The facts of this case are set forth in the state court opinions on Petitioner's appeal. *See* Exhs. A & B to Answer. To briefly summarize, after securing a search warrant police officers searched the mobile home of Richard Kerns (Petitioner's co-defendant), where they found an active methamphetamine laboratory located directly below the trailer. In the laboratory and in the trailer, police discovered and seized precursor chemicals to methamphetamine, filters, scales and plastic bags, as well as tin foil packets used to smoke methamphetamine, some of which tested positive for the presence of methamphetamine, cash and firearms. Kerns and Petitioner were present when the search was conducted and were arrested at the scene, along with Kerns'

Court Record (SCR) vol. 1 at 45-47, 84-85. Petitioner was thereafter sentenced by Order dated November 20, 2002 to serve a term of thirty years on Count I, twenty years on Count II with ten years to serve and ten years suspended for five years post-release supervision, and thirty years on Count III, to run concurrently with the sentence in Count I.[3] *See id.* at 124-25.

Petitioner appealed his judgment of conviction and sentences to the Mississippi Supreme Court, assigning as error the following (as stated by Petitioner's counsel):

I. The verdict of the trial jury is contrary to established principles of law and against the overwhelming weight of the evidence elicited at the trial.

*See* SCR, "Briefs & Other Pleadings" volume. On April 5, 2005, the Mississippi Court of Appeals[4] reversed Petitioner's convictions and sentences, finding that there was insufficient evidence to show that Petitioner had constructive possession of the methamphetamine. *Kerns*[5] *v. State*, 923 So. 2d 210 (Miss. Ct. App. 2005), *reh'g denied*, June 28, 2005. *See* Exh. A to Answer. The State then sought a writ of certiorari to the Mississippi Supreme Court, citing as

---

brother, Michael, and Kerns' girlfriend Jamie Pennington. Michael Kerns and Jamie Pennington were later released from custody and the charges against them were dropped.

[3] With respect to Count III, Petitioner was found to be subject to an enhanced sentencing penalty under Miss. Code Ann. § 41-29-152, which provides that "[a]ny person who violates Section 41-29-313 [possession or manufacture of precursor chemicals] or who violates Section 41-29-139 [manufacture, sale or possession with intent to sell controlled substances] with reference to a controlled substance...and has in his possession any firearm, either at the time of the commission of the offense or at the time any arrest is made, may be punished...by a term of imprisonment or confinement up to twice that authorized by Section 41-29-139 or 41-29-313, or both."

[4] Under Mississippi statute, the Supreme Court may assign any appeal to the Court of Appeals, except with certain exceptions not applicable here. *See* Miss. Code Ann. § 9-4-3. Decisions of the Court of Appeals are final and not reviewable by the Supreme Court except on a writ of certiorari, the granting of which is discretionary. *Id.*

[5] Petitioner was tried with a co-defendant, Richard Earl Kerns. As a result, the state court decision bears the citation *Kerns v. State*, although the full case captions reflect the names of both defendants.

error the following:

> I. Was the majority's decision in conflict with its own decisions and with the criteria for establishing constructive possession as stated by the Mississippi Supreme Court?

In a decision dated December 8, 2005, the Mississippi Supreme Court reversed the Court of Appeals and affirmed the trial court's judgment in its entirety, holding that there was sufficient evidence for the jurors to conclude that Petitioner was in constructive possession. *Kerns v. State*, 923 So. 2d 196, 201 (Miss. 2005), *reh'g denied*, Mar. 23, 2006, *cert. denied*, 547 U.S. 1081 (Apr. 17, 2006). *See* Exh. B to Answer.

Petitioner filed his Petition for a Writ of Habeas Corpus [1] (the "Petition") on April 9, 2007, raising four grounds for relief (as stated by Petitioner):

> Ground One: Evidence insufficient to support a verdict of guilty 5th and 14th Amendments.
>
> Ground Two: State shifting burden of proof during appeal on reasonable doubt.
>
> Ground Three: The Court erred in ruling that McKinney did not have claim to 4th Amendment.
>
> Ground Four: Ineffective assistance of counsel at suppression hearing.

Petition at 6-11. By Order [18] filed October 24, 2007, the District Judge granted this court's Report and Recommendation [15] and granted in part and denied in part Respondent's Motion to Dismiss for Failure to Exhaust [11] and Petitioner's Motion to Amend [13], the court dismissed without prejudice Grounds Three and Four of the Petition, but denied a stay and abatement of the Petition. Thus, the only grounds currently before the Court are Grounds One and Two.

## THE STANDARD OF REVIEW

As the Petition was filed after the effective date of The Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA and case law interpreting it provide the standards under

3

which the Petition must be evaluated. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003). As an initial matter, exhaustion of state remedies is a mandatory prerequisite to federal habeas relief under 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that–
>     (A) the applicant has exhausted the remedies available in the courts of the State; or
>     (B)(i) there is an absence of available State corrective process; or
>        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> . . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To satisfy the exhaustion requirement, the petitioner must first present his claims to the highest state court in a procedurally proper manner so that it is given a fair opportunity to consider and pass upon challenges to a conviction, before those issues come to federal court for habeas corpus review. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999). This is so because state courts, "like federal courts, are obliged to enforce federal law." *Id.* at 844. Thus, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* Exhaustion results from the petitioner's pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings. *See Orman v. Cain,* 228 F.3d 616, 619-20 & n.6 (5th Cir. 2000).[6]

Along with a determination of whether Petitioner has exhausted state court remedies, this court must also determine whether the state court has decided his asserted claims on the merits,

---

[6] The court previously found that Grounds One and Two have been exhausted. *See* [15] [18].

4

thus barring habeas relief except under very limited circumstances. AEDPA provides: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts review pure questions of law, as well as mixed questions of law and fact, under subsection (d)(1). *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000); *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). The "unreasonable application" inquiry is based on an objective standard, and for purposes of the (d)(1) analysis, "unreasonable" does not equate with "incorrect." *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir. 2004). Rather, the application of clearly-established precedent must be both incorrect *and* unreasonable for federal habeas relief to be warranted. *Id.*

Pure questions of fact are reviewed under subsection (d)(2). *Corwin,* 150 F.3d at 471. Determination of a factual issue made by a state court is entitled to a presumption of correctness which the petitioner has the burden of rebutting by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Schriro v. Landrigan*, 127 S.Ct. 1933, 1939-40 (2007).

It is against this backdrop that Petitioner's claims must be reviewed – with the added observation that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are

5

implicated." *Smith v. McCotter,* 786 F.2d 697, 700 (5th Cir. 1986); *see also Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). "It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1993) (citations omitted). Thus, AEDPA provides that the court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 29 U.S.C. § 2254(a) (emphasis added). A state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981) (citations omitted).

Ground One

In Ground One, Petitioner argues that the evidence was insufficient to support his conviction.

Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000).[7] This standard of review allows the trier of fact to find the evidence sufficient to support a conviction, even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citation omitted). Thus, it

---

[7] This standard of review is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Dupuy*, 201 F.3d at 589 (*quoting Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)).

"preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).

Moreover, the determination of the sufficiency of the evidence by a state appellate court is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269 (5th Cir. 1993) ("Where state appellate court has conducted a thoughtful review of the evidence ... its determination is entitled to great deference.") (citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985)); *Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991) (stating that on habeas review, federal court must "give great weight to the state court's determination") (citing *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987)).

In order to establish possession under Mississippi law, "there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Hamm v. State*, 735 So. 2d 1025, 1028 (Miss. 1999) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)). In the absence of actual physical possession, the State must prove constructive possession, which "is established by showing that the contraband was under the dominion and control of the defendant." *Williams v. State*, 971 So. 2d 581, 587 (Miss. 2007) (citation omitted). Where, as here, "contraband is found on premises which are not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession." *Cunningham v. State*, 583 So. 2d 960, 962 (Miss. 1991). Rather, "there must be evidence, in addition to physical proximity, showing the defendant consciously exercised control over the contraband, and, absent this evidence, a finding of constructive possession cannot be sustained." *Id.*; *see also Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990) ("when the defendant is not the owner of the premises the state must show additional incriminating circumstances to justify a finding of constructive

possession."); *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978) ("Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband.").

First, the evidence at trial established Petitioner's proximity to the contraband in question. Not only was Petitioner present at an active methamphetamine laboratory,[8] but he was within two feet of methamphetamine oil, surrounded by precursor chemicals for creating methamphetamine oil and converting it into crystal methamphetamine. Randy Lewis, an investigator with the Warren County Sheriff's Department,[9] testified that Petitioner was arrested "in the middle of the methamphetamine lab." *See* SCR vol. 6 at 575, 600; vol. 7 at 618. Another Warren County Investigator, Jeff Crevitt, testified that the methamphetamine lab was set up on a table underneath the mobile home and that Petitioner was "laying right next to the table." *See* SCR vol. 8 at 757, 769. Investigator Crevitt later testified that Petitioner was approximately two feet from the table (containing the methamphetamine lab) as well as the precursor chemicals when he was apprehended. *See id.* at 796-97.

In addition to Petitioner's physical proximity to the methamphetamine laboratory, there was ample additional incriminating evidence connecting him to the contraband in question. Investigator Crevitt testified that at the time of the police raid, the laboratory was in the final stages of manufacturing methamphetamine and at that point, the process "activates on its own."[10]

---

[8] The site was identified as an active, clandestine methamphetamine lab by a qualified expert. *See* SCR vol. 6 at 454-55, 536.

[9] Investigator Lewis testified as an expert in clandestine methamphetamine lab investigation and safety. *See* SCR vol. 5 at 425, 450.

[10] The so-called "Nazi method" of methamphetamine production was being used at Kerns' trailer. This method, which is characterized by the use anhydrous ammonia as a base, does not require any cooking of chemicals over an open flame. Rather, the various precursor chemicals (including pseudoephedrine and household solvents such as Liquid Fire and starter

*See* SCR vol. 8 at 803-05. Investigator Crevitt also testified that there was a "strong" odor of ether at the lab. *See* SCR vol. 8 at 756, 769, 775. Investigator Lewis testified that by-products of the manufacturing process were found on the ground outside the trailer. *See* SCR vol. 6 at 476, 478, 508-13, 542-65; see also SCR vol. 8 at 862-63. Investigator Lewis and Tara Milam, a scientist with the Mississippi Crime Lab, testified that the chemicals recovered from the lab site contained methamphetamine and the precursor chemicals necessary to produce methamphetamine.[11] *See* SCR vol. 6 at 469-73, 479-80, 546-47, 552, 554, 564-65, 569; vol. 8 at 479-80. Indeed, Investigator Lewis testified that at the time of Petitioner's arrest, all that remained necessary to produce crystal methamphetamine was exposure of the methamphetamine oil to hydrogen chloride gas, which can be formed using the combination of Coke bottles with hoses inserted, rock salt, and sulfuric acid, all of which were found at the trailer. *See* SCR vol. 5 at 442-43, 461, 467-73; vol. 6 at 507-08, 541, 558; vol. 7 at 647-49. Petitioner was found with a holster laying underneath him and a Lorcin .38 handgun halfway out of the holster, and ammunition for the handgun was found on the table near Petitioner, within his reach. *See* SCR vol. 8 at 757-60, 769-70, 789-90, 797-98, 808.

Additionally, a set of scales used for "[w]eighing amounts of controlled substances" as well as plastic bags were recovered in Richard Kerns' bedroom. *See* SCR vol. 6 at 497, 516-18, 569; vol. 7 at 632-45. Pseudoephedrine pills (2880 and coffee filters (used in manufacturing

---

fluid) are mixed and then secondary ingredients are filtered out until a powdered crystal methamphetamine is produced. *See* SCR vol. 5 at 427-36, 443-45; vol. 6 at 451-536.

[11] There was a one gallon jar and two quart jars of methamphetamine found in the lab area, as well as full cans of ether (starter fluid) and sulfuric acid ("Liquid Fire") and a hydrogen chloride gas generator. *See* SCR vol. 6 at 467-73, 475, 479-80, 546-47, 552, 554, 564-65, 569; SCR vol. 7 at 603, 627, 631, 645-48, 652; SCR vol. 8 at 775-76, 782-83, 795-96, 810, 856-61, 863; *see also* Miss. Code Ann. § 41-23-313 (listing these substances, among others, as precursor chemicals). A gas generator hose was recovered from Richard Kerns' bedroom. *See* SCR vol. 7 at 631, 643-44.

9

methamphetamine to filter out by-products) were found inside the trailer in Michael Kerns' bedroom. Some of the coffee filters tested positive for methamphetamine. *See* SCR vol. 6 at 482-90, 514-15, 518-20, 532, 569, 578-79. Tin foil packets used in smoking methamphetamine were found in the kitchen garbage in the trailer, some of which tested positive for the presence of burned methamphetamine. *See* SCR vol. 6 at 524-25, 534.

Finally, Jamie Pennington, Mr. Kerns' girlfriend, testified that Petitioner was involved with methamphetamine and "was there during the whole time." *See* SCR vol. 8 at 891. She testified that Petitioner was at Kerns' trailer "[f]rom the time I met him until I quit hanging out there," including the date of the police raid. *See id.* at 899. She further testified that she had taken Petitioner to obtain anhydrous ammonia, one of the precursors to methamphetamine on more than one occasion, and in fact took him to get some just two days prior to the police raid.[12] *See* SCR vol. 9 at 903-07, 910, 926. Ms. Pennington testified about a conversation she overheard between Petitioner and Richard Kerns in which they discussed obtaining anhydrous ammonia. *See id.* at 905-06. Ms. Pennington testified that she and Petitioner had conversations in which they discussed that the purpose of obtaining the ammonia was for manufacturing methamphetamine. *See id.* at 907-08.

The Mississippi Supreme Court engaged in an extensive analysis of the evidence and concluded as follows:

> Here, a plethora of additional incriminating facts and circumstances supports McKinney's awareness of the 'presence and character' of the precursor chemicals and methamphetamine, as well as his intentional and conscious possession of them. *Curry*, 249 So.2d at 416. Not only was McKinney present at an operating methamphetamine laboratory which smelled strongly of ether; he was within

---

[12] Ms. Pennington also obtained pseudoephedrine pills for Richard Kerns on multiple occasions prior to the police raid, including two days prior. *See* SCR vol. 9 at 903-03, 910-11.

10

> two feet of methamphetamine oil, surrounded by the
> necessary precursor chemicals for both creating
> methamphetamine oil and converting it into crystal
> methamphetamine, in possession of a Lorcin .38 handgun
> and within reach of ammunition[13], and in close proximity to
> tin foil and coffee filters which tested positive for
> methamphetamine. Furthermore, according to the
> uncontradicted testimony of Jamie Pennington, McKinney
> was continually at the premises which housed the
> methamphetamine laboratory, had purchased anhydrous
> ammonia as late as two days before his arrest, and was
> involved in the manufacture of crystal methamphetamine.
> This evidence soars above and beyond mere presence, and
> conclusively establishes constructive possession.

*Kern*s, 923 So. 2d at 201. Petitioner has presented the court with nothing in his Petition that would overcome the deference this court must afford to the state court's decision. Nor, upon its independent review of the record, is the court able to conclude that the evidence, when viewed in the light most favorable to the State, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan*, 271 F.3d at 193 (5th Cir. 2001).[14] Accordingly, habeas relief must be denied.

Ground Two

In Ground Two, Petitioner claims that the state shifted the burden of proof on appeal. *See* Petition at 7. At first glance, this appears to be a reiteration of Petitioner's claim in Ground One regarding the alleged legal insufficiency of the evidence supporting constructive possession, as

---

[13] The court noted that it "has recognized weapons like handguns as 'tools of the drug trade.'" *Kerns*, 923 So. 2d at 199 (citing *Hemphill v. State*, 566 So. 2d 207, 209 (Miss. 1990)).

[14] *See also Bell v. State*, 830 So. 2d 1285, 1288 (Miss. Ct. App. 2002) (rejecting defendant's argument that evidence was insufficient to support a finding of constructive possession where methamphetamine was found in roommate's bedroom in defendant's house, roommate testified that defendant was involved with the methamphetamine production and that defendant received the finished product, and there was testimony that it would be nearly impossible for a resident to miss the strong smell generated by cooking methamphetamine).

Petitioner states: "The state and counsel for Petitioner fail to see that actual possession must be proven to show possession with intent. And both have to be done by prosecution at trial." *See* Petition at 7. However, Petitioner further argues that the shift in burden of proof violated his due process and Fifth Amendment rights, as well as constituted prosecutorial misconduct. *See* Petition at 8. Thus, Petitioner appears to be referring to a claim that he raised in his Motion for Rehearing before the Mississippi Supreme Court in response to the Supreme Court's statement in its opinion that "McKinney offered no explanation for why he was within close proximity to the precursor chemicals." *See Kerns*, 923 So. 2d at 198. In the Motion for Rehearing, Petitioner argued that the court unfairly shifted the burden of proof to him by requiring that he explain his presence at the premises, thereby denying him his Fifth Amendment right not to testify. *See* Exh. E to Respondent's Motion to Dismiss [11].

Petitioner's argument is misplaced. The burden of proof at trial was with the prosecution, and in convicting Petitioner, the jury found that the prosecution had met its burden of proof beyond a reasonable doubt. The comment in question was made by the appellate court - not by the prosecution or judge at trial - and it was made by the court in the context of summarizing the evidence presented against Petitioner at trial and evaluating Petitioner's claim that the evidence was insufficient to support his conviction. The burden of proof was not shifted to or placed on Petitioner.

Petitioner cannot be granted habeas relief unless the Mississippi Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law, or was based upon an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Petitioner has failed to make this showing. As discussed with respect to Ground One, the Mississippi Supreme Court engaged in an extensive analysis of the evidence

presented at Petitioner's trial and concluded that there was more than sufficient evidence to support his conviction. This determination must be afforded great deference, and Petitioner has failed to establish that the evidence was such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan*, 271 F.3d at 193 (5th Cir. 2001). Accordingly, this claim has no merit and habeas relief should be denied.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that the relief sought by Petitioner in his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 5th day of August, 2009.

s/Michael T. Parker<br>United States Magistrate Judge